**In re Jackie WATLEY and Patricia Watley, Debtors.**

**L.M. "Sam" HUMPHREYS, Plaintiff,**

**v.**

**Jackie WATLEY, Defendant.**

**Bankruptcy No. 89–04414.**
**Adv. No. 90–0863.**

United States Bankruptcy Court, N.D. Alabama.

May 29, 1991.

---

Harry P. Long, Anniston, Ala., for plaintiff.

Jackie Watley, pro se.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

*Introduction:*

The above-styled bankruptcy case was commenced by the chapter 13 petition of the defendant and his wife, but was converted by them to a case under chapter 7, title 11, United States Code, and remains pending before this Court as a chapter 7 bankruptcy case. The above-styled adversary proceeding was commenced in the chapter 7 bankruptcy case by the plaintiff and his mother and against the defendant and his wife; however, there has been a voluntary dismissal of the plaintiff's mother and of the defendant's wife as parties. The adversary proceeding initially sought to have the Court deny a discharge in bankruptcy, pursuant to 11 U.S.C. § 727(a), or, if a discharge were granted, to have the Court determine that the defendant was indebted to the plaintiff upon a debt arising from the defendant's alleged conversion of personal property of the plaintiff and not dischargeable as being "for [a] willful and malicious injury ... to the property of another ...," pursuant to 11 U.S.C. § 523(a)(6). On motion of the defendant, the aspect of the plaintiff's complaint which objected to the granting of a discharge to the defendant was dismissed.

On March 21, 1991, this adversary proceeding was tried before the Court, without the intervention of a jury and upon the plaintiff's complaint and the defendant's denial. The plaintiff appeared by legal counsel. The defendant, although previously represented by legal counsel in this bankruptcy case, has appeared *pro se* throughout this adversary proceeding. At the conclusion of the trial, efforts to effect a settlement of this dispute were renewed but failed, and this matter was taken under advisement by the bankruptcy judge.

The chronology of the events and the facts upon which this controversy rests are not particularly complicated, but the testimony taken at the trial was marked by considerable confusion. It may be said that the chronology of the events affecting this dispute was established by the random-selection process.

*Findings of Fact:*

From the court file for this bankruptcy case and this adversary proceeding, of which the bankruptcy judge takes judicial notice, the evidence presented at the trial, and the facts established by implication from the statements of plaintiff's attorney and the testimony of the parties, the Court

finds the facts relevant to the issue before the Court to be as follows:

A. *Chronology.*

1. March 2, 1989, defendant and wife filed chapter 13 petition.

2. June 12, 1989, consent order grants relief from stay (11 U.S.C. § 362) to plaintiff and plaintiff's mother for them "to enforce their interests in and to their property in the possession of the [defendant]," in the event that the defendant fails to make timely payments of various sums recited in the consent order, which was drafted by plaintiff's attorney.

3. August 24, 1989, order confirming chapter 13 plan.

4. April 16, 1990, judgment of Circuit Court of Calhoun County, Alabama, for the recovery from the defendant of $31,897.78 and the premises at 914 Noble Street, Anniston, Alabama, by plaintiff's mother, and of the sum of $8,300.00 and of therein-described personal property, "free and clear of any interests defendants might have therein," by the plaintiff. The judgment listed 220 steel frame chairs, 14 steel frame plush bar stools, 62 (24″) round bar tables, 10 (30″ × 72″) banquet tables, and sundry commercial or business items.

5. May 15, 1990, voluntary conversion by defendant and wife of chapter 13 case to a case under chapter 7, title 11, United States Code.

6. May 25, 1990, clerk's notice to creditors, informing them of creditors meeting, pursuant to 11 U.S.C. § 341, to be held June 20, 1990.

7. August 15, 1990, complaint filed, commencing this adversary proceeding.

8. November 13, 1990, order of discharge of defendant and wife in chapter 7 bankruptcy case.

9. March 21, 1991, trial of adversary proceeding.

B. *Extrajudicial Aspects of Plaintiff's Claim.*

1. In November or December of 1984, plaintiff acquired the personal property which he contends was converted by the defendant to the latter's own use, consisting of 215 metal chairs with padded seats and backs, 7 bar tools, 60 round tables and 8 banquet tables, together with other furniture and equipment—all suitable for use in conducting a bar where people gather for dancing and the consumption of alcoholic beverages.

2. The plaintiff's mother owned a commercial building in the 900 block of Noble Street, in downtown Anniston, and there, the plaintiff commenced the operation of a bar, utilizing the personal property referred to.

3. In March or April, 1985, the defendant, with persons related to him by blood or marriage, formed a closely-held corporation under the name of Chateau Lounge, Inc., and on behalf of the corporation, the defendant negotiated through the plaintiff for a lease of the commercial building and for the defendant to utilize the personal property in question at that location, for the operation of a bar by the corporation under the name of "Chateau Lounge."

4. It is unclear from the evidence as to whether the corporation's arrangement with the plaintiff as to the personal property was merely a lease or whether it was a sale by the plaintiff, but a fair inference from the evidence would be that the transaction involving the personal property was a sale by the plaintiff to the corporation, with the purchase price to be paid in monthly increments.

5. The corporation continued to operate the Chateau Lounge (bar) at that location, under the management of the defendant, until a short time prior to the entry of the state court judgment against the defendant, on April 16, 1990, after which the corporation vacated the premises.

6. At various times, the Chateau Lounge drew 200 to 400 patrons per night, and the defendant on its behalf purchased additional furniture and equipment for the operation of this bar, including chairs, stools, and tables similar to those obtained from the plaintiff, but none of the chairs, stools, or tables obtained from the plaintiff or otherwise bore any serial number or by

other means could be identified as being property obtained or not obtained from the plaintiff.

7. During the period of operation of the Chateau Lounge, the building roof leaked and admitted considerable amounts of rainwater which damaged and made unusable a significant amount of the furniture obtained from the plaintiff.

8. As a result of a disagreement between the plaintiff and the defendant, arising in part from a default by the corporation in making its payments required under its arrangements with the plaintiff and his mother, the plaintiff and his mother brought suit in the state courts against the defendant and others, seeking monetary judgments and a judgment for possession of the real and personal property leased or sold to the corporation, but the state court proceedings were interrupted by the filing of the chapter 13 petition on March 2, 1989.

9. After an additional default in payments by the corporation to the plaintiff and his mother, they resumed the state court proceeding, resulting in the judgment there entered on April 16, 1990.

10. At about this time, the defendant moved the corporation's bar operation to the 1200 block on Noble Street, at the old Cook Furniture Store location, and undertook to operate the bar under the name "BMW Club" and moved to the new location a substantial amount of bar furniture and equipment from the building owned by the plaintiff's mother.

11. The plaintiff called his attorney, and they proceeded to inspect the building owned by the plaintiff's mother and found but little of the personal property which had been turned over to the defendant approximately five years earlier.

12. The plaintiff's attention having been called to the new bar location, he observed chairs, stools, and tables there which were similar to those turned over by him to the defendant, but the plaintiff was uncertain as to whether the furniture observed at the new bar location was the same property turned over by him to the defendant, who maintained that only property not acquired from the plaintiff by the corporation was moved to the new location.

13. An unspecified amount of furniture similar to that in question was located at the second bar site and was owned by the landlord at that site.

14. The aggregate value of all property of the plaintiff alleged to have been converted by the defendant is $3,295.00.

*Conclusions by the Court:*

■ This adversary proceeding having finally resolved itself into a dispute as to what, if any, personal property of the plaintiff, which was obtained from him and devoted to the corporation's bar business known as the Chateau Lounge, was converted by the defendant by removing it to the new location of the bar business (then known as the BMW Club), the plaintiff had the burden of establishing (by a preponderance of the evidence) the identity of any property converted by the defendant and its value. See *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The evidence presented or inferred and that of which judicial notice was taken falls short in several regards.

It very well may be that some portion of the personal property acquired from the plaintiff was removed to the new location in the 1200 block of Noble Street, but the identity of the items is not established. Similar property was acquired from time to time in the operation of the Chateau Lounge, property obtained from the plaintiff was abandoned or junked from time to time because of damage to it from rainwater, and similar property at the new location belonged to the landlord there. It is also reasonable to assume that some fair portion of the property acquired from the plaintiff became unusable, over a period of five years of use in a bar patronized at times by 200 to 400 people during a night's business. The chairs, stools, and tables bore no identifying serial numbers or other marks or characteristics. Even the plaintiff was unable to say, for certain, that the property at the BMW Club was the property obtained from him at the site of operation of the Chateau Lounge. The testimony of the defendant was emphatic that

none of the property moved to the new location had been obtained from the plaintiff.

It is not at all clear from the evidence that the plaintiff merely leased the chairs, stools, tables and other bar-related property to the corporation. At pages 67 and 68 of the transcript of the trial, it is noted that the plaintiff's testimony was that he and the defendant "made a handshake agreement on the furniture," that the defendant "agreed to pay [him] for the equipment, which [the defendant] never did," and that the plaintiff just wanted his equipment. The plaintiff responded to the defendant's questions about their dispute by stating: "[y]ou haven't paid me[;] I want my money [; t]hat has been the disagreement". Along the same line was the plaintiff's further response: "[t]he only disagreement we have been in is I have always tried to get you to pay me." If the personal property was sold by the plaintiff, without the retention of a security interest, created by a security agreement (a writing executed by the corporation), the property in question belonged to the corporation at the time of the alleged conversion, and the plaintiff did not have any property involved which could have been subject to a conversion by the defendant—*i.e.*, the plaintiff had neither an ownership interest nor a security interest in the chairs, stools, and tables, after their sale by him to the corporation.

To paraphrase the Alabama *Uniform Commercial Code* in this regard: A security interest is not enforceable against the debtor (the corporation) or third parties (the defendant), with respect to the collateral, *and does not attach*, unless the debtor has signed a security agreement which contains a description of the collateral. Ala.Code § 7–9–203 (1975, 1984 repl.vol.). If it was the plaintiff's intention to sell the bar furniture to the corporation and retain a security interest until the purchase price was paid, apparently this was not accomplished, as there was no evidence of any writing which covered the transaction.

The question of ownership of the bar furniture was not resolved by the state court judgment introduced into evidence because it does not purport to divest any title to the property which may have been vested in the corporation. In part (3), it adjudicates against the interests of the "defendants," none of whom was shown to be the corporation.

A further bar to the plaintiff's recovery lies in the absence of an established date for the defendant's alleged conversion of the bar furniture. The discharge of the defendant in this chapter 7 bankruptcy case discharged him "... from all debts that arose before the date of the order for relief under this chapter, ..." except as provided in section 523 of title 11, United States Code. 11 U.S.C. § 727(b). In 11 U.S.C. § 348(b), this reference to "the order for relief under this chapter" is stated to mean "... the conversion of such case to such chapter." Here, the conversion of the case occurred May 15, 1990.

If the defendant's alleged conversion of the bar furniture occurred after that time, there is no basis for this Court to adjudicate the dischargeability of the resulting debt and render a money judgment thereon, because the defendant's discharge does not reach or affect the debt.

In this adversary proceeding there is no property claimed by the plaintiff which has been identified as property converted or taken by the defendant to the BMW Club or otherwise, so as to create a debt excepted from the defendant's discharge in bankruptcy by 11 U.S.C. § 523(a)(6). If some of the property taken to the BMW Club had been identified as property claimed by the plaintiff, the transaction five years earlier may have been a sale instead of a lease, leaving the plaintiff with no ownership or security interest in the property. Furthermore, this adversary proceeding cannot be found to be not futile, in the absence of a date for the alleged conversion, established by the evidence to precede the conversion of the chapter 13 bankruptcy case.

The complaint of the plaintiff, not being established by a preponderance of the evidence, must be dismissed.